# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SCOTT DEASE, | CIVIL ACTION |
| Plaintiff, | NO. 18-5106 |
| v. |  |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION[1], |  |
| Defendant. |  |

**Henry S. Perkin, M.J.**                                                **March 31, 2020**

## MEMORANDUM OPINION

Plaintiff, Scott M. Dease ("Plaintiff"), brings this action under 42 U.S.C.
§ 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of
the Commissioner of Social Security ("Defendant"), denying his claim for disability insurance
benefits ("DIB") and supplemental security income ("SSI") provided under Titles II and XVI of
the Social Security Act ("the Act").  42 U.S.C. §§ 401-433, 1381-1383f.  Subject matter
jurisdiction is based upon section 205(g) of the Act.  42 U.S.C. § 405(g).  Presently before this
Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 12)
filed May 2, 2019; Defendant's Response to Request for Review of Plaintiff (ECF No. 13) filed
May 17, 2019; and Plaintiff's Brief in Reply to Defendant's Brief in Response to Plaintiff's
Request for Review (ECF No. 14) filed May 23, 2019.  For the reasons that follow, Plaintiff's

---

[1] Andrew M. Saul became the Commissioner of Social Security in June 2019. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted as a party in place of Nancy A. Berryhill, who was Acting Commissioner from January 23, 2017 through June of 2019.

Request for Review will be **DENIED** and the decision of the Commissioner of Social Security be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB on January 27, 2015 and for SSI on January 31, 2016, alleging disability since July 27, 2011. (Record at 17, 68.) As Plaintiff had previously filed for benefits and was denied on June 6, 2012, the Administrative Law Judge ("ALJ") adjudicated this case with an alleged onset date of June 7, 2012. (Record at 17.)

Plaintiff claims disability as a result of a spinal injury due to a motor vehicle accident, five stents, congestive heart failure, high blood pressure, diabetes, high cholesterol, chronic obstructive pulmonary disease, and asthma. (Record at 59, 69.) Plaintiff's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2017, which is referred to as the date last insured. (Record at 19, 246.) Thus, in order to be eligible for DIB benefits, Plaintiff must prove that he became disabled on or before December 31, 2017. (Record at 19, Finding No. 1.)

The state agency initially denied Plaintiff's claim for DIB on July 9, 2015, and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Record at 17, 59-69, 74.)[2] A hearing was held on October 2, 2017 at which Plaintiff, who was represented by counsel, appeared and testified. (Record at 38-58). Carolyn E. Rutherford, a vocational expert ("VE"), did not appear at the hearing, however submitted post-hearing responses to interrogatories. (Record at 300-337.)

---

[2] The record does not indicate the exact date that Plaintiff's claim for SSI was denied, however this Court references the ALJ's opinion to note that both applications for DIB and SSI were denied at the initial levels. (Record at 17.)

On April 3, 2018 after having considered evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision in which he found that Plaintiff, given his age, education, work experience, and residual functional capacity ("RFC"), was capable of performing jobs that existed in significant numbers in the national economy. (Record at 27, Finding No. 10.) Thus, the ALJ concluded that Plaintiff was not disabled. (Record at 27, Finding No. 11.) Plaintiff timely requested review of the ALJ's decision on April 6, 2018. (Record at 4, 11-12.) The Appeals Council denied Plaintiff's Request for Review on September 28, 2018. (Record at 1-6.) Thus, the ALJ's decision, dated April 3, 2018, became the final decision of the agency. (Record at 1.)

Plaintiff initiated a civil action on November 27, 2018, seeking judicial review of the Commissioner's decision that he was able to perform a significant number of jobs in the national economy, and thus was not entitled to DIB or SSI. (ECF No. 2.) Plaintiff filed a request for review on May 2, 2019. (ECF No. 12.) The Commissioner filed his response on May 17, 2019, and Plaintiff filed a reply brief on May 23, 2019. (ECF Nos. 13, 14.)

## II. <u>LEGAL STANDARD</u>

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). <u>See also</u> <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied, 507 U.S. 924 (1993). Substantial evidence is "more than a mere scintilla of evidence," but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Therefore, the issue before this Court is whether there is substantial evidence to support the Commissioner's final decision that Plaintiff is "not disabled" and is capable of performing jobs that exist in significant numbers in the national economy.

Though the Court's duty is "to scrutinize the record as a whole to determine whether the conclusions reached [by the ALJ] are rational," Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979), the Court may not undertake de novo review of an ALJ's decision, nor may it re-weigh the evidence of record. Williams, 970 F.2d at 1182 (A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). However, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last

continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. See id. § 404.1520(b)-(f).

Schaudeck, 181 F.3d at 431-32. The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. Poulos v. Comm'r of Social Sec., 474 F.3d 88, 92 (3d Cir. 2007). RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

## III.  **BACKGROUND**

Plaintiff, born on July 7, 1965, was forty-six years old at the time of his amended alleged disability onset date. (Record at 26, 68.) Plaintiff's highest level of education is eleventh grade and he has no specialized job training, trade, or vocational schooling. (Record at 43, 227.) With respect to work history, Plaintiff testified that he last worked in 2013 as a self-employed ice cream truck driver, however had to stop working due to increased back and neck pain and shortness of breath. (Record at 19, 44, 46.)[3] Prior to his work as an ice cream truck driver, Plaintiff's relevant work history included employment as a construction worker and truck delivery driver. (Record at 26, 227, 321.)

---

[3] Though the Plaintiff reported earnings in 2013, the ALJ found this work to be an unsuccessful work attempt as Plaintiff had to stop working after four months due to increased pain. (Record at 19.)

During the October 2, 2017 hearing, the ALJ summarized Plaintiff's full medical history of impairments as: coronary artery disease, a 1998 heart attack, recurrent stenting surgeries, uncontrolled diabetes, a work-related injury, 2012 surgery to immobilize and stabilize spinal segments in connection with fusion of the occipital cervical thoracic region of the spine with residual cervical radiating pain and left arm weakness, chronic obstructive pulmonary disease, acute respiratory failure, 2011 cervical spine surgery, high blood pressure, asthma, emphysema, inflammation or irritation of the esophagus, abnormal amount of cholesterol or of fats in Plaintiff's blood, excess protein in Plaintiff's urine, back pain, a July 2011 motor vehicle accident, shortness of breath, obesity, a duodenal ulcer, hemorrhoids, hepatitis, low oxygen level at night, obstructive sleep apnea, scaly skin, low levels of potassium and sodium in Plaintiff's blood, congestive heart failure, and bilateral upper and lower extremity diabetic neuropathies. (Record at 44-45.)

In response to questioning from his attorney, Plaintiff repeatedly testified that he experiences pain in his neck, arms, hands, and back. (Record at 46-50.) Plaintiff described that the pain in his neck is "just always there" and prevents him from fully turning his head to either side. (Record at 47.) Further, Plaintiff explained that the pain in his arms is "chronic" and extends from the shoulders to the hands. Id. Plaintiff's left arm is "really weak" and he has problems holding items in his right hand as his lower right bottom hand is numb and painful. (Record at 48.)

Regarding his leg pain, Plaintiff testified that both legs feel "numb" and "sore", allowing him to only stand ten to fifteen minutes and walk for five minutes at one time. (Record at 50.) Plaintiff also explained that his right leg is swollen, causing the skin to dry and crack. Id. Because of lower back pain, Plaintiff can only sit for a maximum of "half an hour." Id. At most,

Plaintiff can lift one gallon of milk, however, will feel pain in his arms, back, and neck while doing so. (Record at 51-52.) Plaintiff further represented that he frequently experiences shortness of breath while walking up stairs and suffers from sleep apnea, causing him to frequently wake up throughout the night. (Record at 51.)

In a typical week, Plaintiff testified that he will have three "good days" during which he will try to "get out of the house at least and do something" such as taking his grandchildren out on a ride or for ice cream. (Record at 56.) Plaintiff resides with his girlfriend, her two daughters, and his two granddaughters. (Record at 43.) With respect to household activities, Plaintiff helps take care of his grandchildren by changing their diapers, folding laundry, and cleaning dishes. (Record at 52.) During a "bad day", Plaintiff noted that he will remain inside the house because of pain and high blood sugar. (Record at 56.)

Despite the pain Plaintiff experiences, he testified that he is able to lift both arms over his head, extend both arms out in front of himself and to either side of himself, and bend at the waist. (Record at 53-55.) Plaintiff indicated that he is prescribed medication for both his diabetes and nerve pain and does not experience any side effects from the medication. (Record at 53.)

Following the administrative hearing, the ALJ sought the testimony of VE Rutherford via written interrogatories. (Record at 300.) On November 25, 2017, the VE submitted her responses to the interrogatories, and on November 30, 2017, the VE submitted amended responses. (Record at 301-337.)[4] The VE classified Plaintiff's past work as a truck delivery driver as medium, semiskilled work, as a construction worker as heavy, semiskilled

---

[4] In VE Rutherford's initial interrogatory responses, she noted that the record indicated that the Plaintiff never had full time employment, and thus no past relevant work. (Record at 302.) In her amended responses, VE Rutherford corrected this section and classified Plaintiff's past work as a construction worker and truck delivery driver as past relevant work. (Record at 321.)

work. (Record at 321.) The ALJ asked the VE to consider two hypothetical scenarios regarding Plaintiff's residual functional capacity in determining whether the Plaintiff, given these RFCs, would either be able to perform his past relevant work or, alternatively, unskilled occupations that exist in significant numbers in the national economy. (Record at 322-331.) Both hypotheticals incorporated Plaintiff's age, education, work experience, and medically documented impairments. Id.[5]

The first hypothetical limited the Plaintiff as follows: lifting and carrying twenty pounds occasionally and ten pounds frequently; standing for six hours, walking for four hours, and unlimited sitting in an eight-hour workday; alternating to standing for five minutes after every hour of sitting, to sitting for five minutes after every hour of standing, and to sitting for five minutes after every thirty minutes of walking; frequently using foot controls in both feet, frequently using hand controls in his right hand, and occasionally using hand controls in his left hand; frequent reaching, handling, fingering, and feeling; frequently climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; never balancing or climbing ladders or scaffolds; and exposure frequently to environmental conditions, occasionally to operating a motor vehicle and moving mechanical parts, and never to unprotected heights. (Record at 323-25.) The VE opined that, with these limitations, Plaintiff could not perform his past relevant work. (Record at 330.) However, the VE explained that the Plaintiff could perform

_____

[5] The ALJ summarized these impairments as: history of coronary artery disease; 1998 heart attack; recurrent stenting surgeries; poorly controlled diabetes; history of work related injury and 2012 surgery using a system of plates, rods, and screws to immobilize and stabilize spinal segments in connection with fusion of the occipital-cervical-thoracic region of the spine with residual cervical radiating pain and left arm weakness; chronic obstructive pulmonary disease; history of acute respiratory failure; history of 2011 cervical spine surgery; high blood pressure; asthma; emphysema; inflammation or irritation of the esophagus; abnormal amount of cholesterol or other fats in the blood; excess proteins in the urine; back pain; history of 2011 motor vehicle accident; history of shortness of breath; obesity; history of a duodenal ulcer; uncontrolled diabetes; hemorrhoids; history of hepatitis; low oxygen level at night; obstructive sleep apnea; red, itchy, scaly skin; history of cervical disc displacement; low level of potassium and sodium in blood; above normal level of white cells in blood; diabetic nerve damage in arms and legs; history of congestive heart failure; and sleep deprived. (Record at 322.)

the following light, unskilled jobs: "assembler/assembly" (of which there are approximately

230,000 jobs in the national economy), "packer" (of which there are approximately 340,000 jobs

in the national economy), and "benchwork" (of which there are approximately 60,000 jobs in the

national economy). (Record at 331.)

The second hypothetical that the ALJ asked the VE to consider included

variations in the exertional, manipulative, postural, and environmental limitations. (Record at

326-28.) Most notably, the hypothetical limited Plaintiff to: sitting for four hours, standing for

two hours, and walking for two hours in an eight-hour workday. (Record at 326.) With these

specific limitations, the VE opined that Plaintiff would neither be able to perform past relevant

work nor any alternative unskilled occupation. (Record at 330-31.) The VE explained that if a

person can only sit four hours a day, the rest of the workday would need to be at their

workstation and the hypothetical only allows for two hours standing. (Record at 335.)

In addition to reviewing the transcript of the administrative hearing and VE

interrogatory responses, this Court has independently and thoroughly reviewed the 2,343-page

administrative record. We will not further burden the record with a detailed recitation of the

facts. Rather, we incorporate relevant facts in our discussion below.

## IV.    ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff's alleged disability involves an inability to work because of a spinal

injury due to a motor vehicle accident, five stents, congestive heart failure, high blood pressure,

diabetes, high cholesterol, chronic obstructive pulmonary disease, and asthma. (Record at 59,

69.) The ALJ, however, proceeded through the sequential evaluation process and determined that

Plaintiff was not disabled as a result of his impairments. (Record at 14-28.)

At step one, the ALJ initially noted that Plaintiff had not engaged in any substantial gainful activity from June 7, 2012, the alleged onset date, through his date last insured December 31, 2017. (Record at 19, Finding No. 2.)

At step two, the ALJ found that Plaintiff had the following severe impairments: hypertension, ischemic heart disease, chronic venous insufficiency, congestive heart failure, coronary artery disease, residual effects of heart and recurrent stenting surgeries, chronic diastolic dysfunction, cardiomyopathy, obesity, atherosclerosis, asthma/COPD/emphysema, cervical disc disorder, diabetes mellitus with neuropathy, dyslipidemia, and status post occipital thoracic stabilization with residual left C6 radicular signs. (Record at 20, Finding No. 3.)

At step three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, could not establish his entitlement to benefits on that basis. (Record at 20-22, Finding No. 4.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RCF") to perform light work with the following limitations: standing six hours of a standard eight-hour day; walking four hours of a standard eight-hour day; no more than frequent bilateral foot control and hand control operations; no more than frequent bilateral overhead reaching, all other reaching, handling, fingering, and feeling; no balancing or climbing of ladders or scaffolds, no more than occasional stooping, kneeling, crouching, or crawling; no more than frequent climbing of ramps or stars; no exposure to unprotected heights; no more than occasional exposure to moving mechanical parts and operating a motor vehicle; no more than frequent exposure to weather, humidity, wetness, extreme could, extreme heat, vibration, and dusts/odors/fumes/pulmonary irritants, and loud noises. (Record at 22, Finding No. 5.)

Further, Plaintiff must be afforded the opportunity to alternate to: standing for five minutes after one hour of sitting, sitting for five minutes after every one hour of standing, and sitting for five minutes after every thirty minutes of walking. Id.  In view of the interrogatory responses provide by the VE,  the ALJ found that Plaintiff was unable to perform his past relevant work experience as a construction worker or truck delivery driver.  (Record at 26, Finding No. 6.)

However, the ALJ found at step five that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (Record at 27, Finding No. 10.) These jobs included "assembler/assembly", "packer", and "benchwork" representing, "at least 60,000 to 340,000" jobs in the national economy. (Record at 27, Finding 10.) Thus, a finding of "not disabled" was appropriate. (Record at 24.)

In his Request for Review, Plaintiff asserts that the ALJ erred because he: (1) failed to consider material evidence of impairment, (2) improperly discounted the opinions by the treating internist, (3) relied on limited activities of daily living to deny the claim for benefits, and (4) failed to consider excellent work history in assessing credibility (ECF No. 12 at 5-19.) The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing.  Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for his decision.  Accordingly, we conclude that the ALJ's

decision is supported by substantial evidence of record and Plaintiff's Request for Review is denied.

## V. __DISCUSSION__

Ultimately, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the additional limitations described in his decision. (Record at 22, Finding No. 5.) Plaintiff's first argument, that the ALJ failed to consider material evidence of impairment, contains a number of separate contentions which the Court addresses in subsections below. The Court also finds Plaintiff's three remaining arguments - that the ALJ improperly discounted the opinions of the treating internist, erred in relying on activities of daily living, and failed to consider Plaintiff's work history in assessing credibility – unpersuasive as substantial evidence supports the ALJ's decision.

### a. __The ALJ Accurately Represented the Opinion of Non-Examining Expert Dr. Vrajlal Popat__

Plaintiff first contends that the ALJ erred in finding that Plaintiff could do light work when "in actuality, the sitting, standing and walking total for an eight-hour workday found by the state agency consultant was only six hours and therefore not consistent with light work or any other full-time work." (ECF No. 12 at 5-6.) Plaintiff erroneously cites to page sixty-one of the transcript in support of his argument. As noted by Defendant, this page contains Dr. Popat's summary of Dr. Zimba's June 17, 2015 opinion, not the opinion of Dr. Popat himself. (Record at 61.) Dr. Popat opined that Plaintiff can stand and/or walk for six hours and sit for six hours in an eight-hour workday. (Record at 64.) Accordingly, this Court finds that the ALJ accurately represented the opinion of Dr. Popat that Plaintiff is capable of light work activity with other postural limitations.

**b. Substantial Evidence Supports the ALJ's Evaluation of VE Testimony**

Plaintiff presents two arguments with respect to the VE testimony in support of his argument that substantial evidence does not support the ALJ's decision. First, Plaintiff maintains that, when summarizing the VE's responses to his hypotheticals, the ALJ failed to address the VE's response to the second hypothetical in which the VE opined that Plaintiff would neither be able to perform past relevant work nor any alternative unskilled occupation. (ECF No. 12 at 6.) Defendant responds that it is "well established that an ALJ is not required to credit VE testimony elicited in response to a hypothetical question that includes limitations that the ALJ finds to be inconsistent with the record evidence." (ECF No. 13 at 8) (citing Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).

In order for a VE's testimony to provide an appropriate basis for decision-making, the ALJ must present the VE with a hypothetical inquiry that "reflect[s] all of a claimant's impairments that are supported by the record." Chrupcala, 829 F.2d at 1276 (citing Podedworny v. Harris, 745 F.2d 210 (3d Cir.1984); Wallace v. Secretary, 722 F.2d 1150 (3d Cir.1983)). While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. Podedworny 745 F.2d at 218 (citing Tennant v. Schweiker, 682 F.2d 707, 711 (8th Cir.1982)). Thus, to rely on a VE's testimony as substantial evidence to support the ALJ's decision, the hypothetical need only fairly set forth every *credible* limitation, not every *alleged* impairment. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.2005).

As noted, supra at Section III, the ALJ submitted post-hearing interrogatories with two hypotheticals to the VE.  Based on the limitations set forth in the first hypothetical – including limiting Plaintiff to standing for six hours, walking for four hours, and unlimited sitting in an eight-hour workday –  the VE testified that Plaintiff could perform light work with additional limitations. (Record at 323.) The second hypothetical, however, limited the Plaintiff to sitting for four hours, standing for two hours, and walking for two hours in an eight-hour workday. (Record at 326.) The VE explained that, if a person can only sit four hours a day, the rest of the workday would need to be at their workstation and the hypothetical only allows for two hours standing. (Record at 335.) Thus, the second hypothetical would not allow for light work.

This Court finds that the ALJ's reliance on the first hypothetical in determining the claimant is not disabled was not erroneous as it encompasses all of Plaintiff's limitations that are supported by the record. The second hypothetical presented to the VE incorporates all of the limitations contained within Dr. Frank Zimba's June 15, 2017 Medical Source Statement. (Record at 440-445.) In the opinion, the ALJ explains that he "accorded little weight to the findings and conclusions of Frank Zimba, M.D." (Record at 25.) The ALJ specifically notes that Dr. Zimba "overstated the claimant's standing and walking limitations" in light of the claimant's reported capabilities, cardiac improvement, and cardiovascular examinations. Id. at 25-26.

Citing to the record, the ALJ adequately supports his reasoning for rejecting the limitations put forth by Frank Zimba which formulate the second hypothetical. With respect to claimant's reported capabilities, the ALJ notes that Plaintiff exhibited a normal gait and normal range of motion in musculoskeletal examinations from 2014, 2015, 2016, and 2017.  (Record at

24-25.) The ALJ summarized other activities that are not consistent with the presence of greater physical limitations as follows:

> [O]n June 25, 2013, the claimant reported that he had been recently walking a lot. Further, on June 17, 2015, the claimant reported that he lived with his girlfriend and helped with cooking along with being able to shower and dress himself. On April 27, 2016, the claimant underwent a physical in order to provide foster care for his grandchildren ages 10 months old and three years old. The claimant was reported as having "been caring for them, doing well." On April 12, 2017, the claimant was reported as cooking three times per week, shopping once a week, being able to dress himself, and providing childcare twice a week. On August 23, 2017, the claimant was noted as wanting to adopt his grandchildren. Also , at the October 2017 disability hearing, the claimant testified that he was able to drive an automobile.

(Record at 25)(internal citations omitted).

With respect to Plaintiff's cardiac improvement and cardiovascular examinations, the ALJ notes that, during multiple examinations and evaluations, "the claimant was reported without chest pain or exertional symptoms." (Record at 24.) Additionally, a May 11, 2015 echocardiogram "revealed significant improvement in LV systolic function and normal right ventricular systolic function." Id. The ALJ further remarked that: Plaintiff was "reported as having an ejection fraction of 60%"[6]; on November 5, 2015, Plaintiff was reported as having a stable cardiovascular condition; there is no evidence of surgical intervention for chronic venous insufficiency or any recent surgical intervention for Plaintiff's other cardiac conditions; and Plaintiff's treatment for asthma/COPD has been relatively conservative with treatment primarily being through medications. Id. Overall, this Court finds that the ALJ's opinion sufficiently

---

[6] Ejection fraction is a measurement of the percentage of blood leaving your heart each time it contracts. A Left Ventricle ejection fraction of 55 percent or higher is considered normal. See https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286

explains why he credited the VE's responses to the first hypothetical as the second included limitations which were not objectively supported by the record.

Second, Plaintiff argues that the ALJ erred because he did not "provide any explanation as to why the VE indicated in one place that the Plaintiff did not have past relevant work while the ALJ found that the Plaintiff did." (ECF No. 12 at 6-7.) Plaintiff cites Social Security Ruling (SSR) 00-4p which provides that, before relying on VE evidence, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs… and information in the Dictionary of Occupational Titles (DOT)…" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p.

In response, Defendant states that the VE's amended responses to the ALJ's interrogatories did indicate that Plaintiff had past relevant work. (ECF No. 13 at 6.) Defendant maintains that SSR 00-4p requires an ALJ to address apparent unresolved conflicts between VE testimony and the DOT, not between a VE's initial and amended responses to interrogatories. Id.

As Defendant notes, the VE did submit amended responses to the ALJ's interrogatories on November 30, 2017. While the VE's original responses indicated that Plaintiff had no past relevant work, she amended this response to include Plaintiff's past employment as a construction worker and as a truck delivery driver as past relevant work. (Record at 302, 321.) This Court further agrees with Defendant that SSR-004p does not require the ALJ to explain discrepancies between the VE's initial and amended responses to post-hearing interrogatories. As described in the Social Security Administration's policy interpretation section for SSR-004p, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. Policy Interpretation Ruling : Titles II and XVI: Use of

Vocational Expert and Vocational Specialist Evidence, And Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). When there is "an apparent unresolved conflict" between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a disability determination. Id. In the instant case, there is not an apparent conflict between the VE testimony and information in the DOT as the VE did opine, in her amended responses, that Plaintiff's prior employment constituted past relevant work.

### c. Substantial Evidence Supports the ALJ's Consideration of Evidence of Impairment

In seven pages of his brief, Plaintiff identifies over thirty-five individual treatment notes and hospitalization records which he claims were either ignored or misinterpreted by the ALJ. (ECF No. 12 at 7-13.) Plaintiff contends that the ALJ's decision is "replete with cherry-picking" evidence favorable to his conclusion. Id. at 7, 13. Plaintiff also claims that the ALJ did not provide an adequate explanation for why he relied on certain evidence while minimizing or not bothering to analyze other. Id. at 5.

In response, Defendant suggests that Plaintiff "seems to conflate what an ALJ must consider with what an ALJ must discuss in his decision. (ECF No. 13 at 8.) Defendant maintains that "[t]he ALJ was not required to specifically discuss every piece of evidence but, rather, was required to explain his conclusions in a way that meaningfully permits judicial review." Id. at 9. The ALJ "fulfilled this obligation by explaining how he considered the objective medical evidence, Plaintiff's subjective complaints, the various physician opinions, and the weight that he assigned to them in deciding Plaintiff's residual functional capacity." Id.

When determining an individual's residual functional capacity, the ALJ must consider all relevant evidence. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Fargnoli, 247 F.3d at 41. There is no requirement, however, that the ALJ "discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential). See also Mays v. Barnhart, 227 F. Supp. 2d 443, 449 (E.D. Pa. 2002) (finding that the ALJ is not required to explicitly discuss every report in the record if there is other evidence that supports the ALJ's conclusion), aff'd, 78 F. App'x 808 (3d Cir. 2003).

An ALJ need not cite all evidence a claimant presents. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008). "A written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (not precedential). "Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." Id. (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). This Court finds that the ALJ acted in accordance with the Commissioner's regulations and Third Circuit case law when he evaluated and considered, inter alia, the treatment notes in determining that Plaintiff is not disabled.

Beginning with Plaintiff's cardiovascular impairments, Plaintiff maintains that the ALJ erred because he failed to: report that a 2013 chest X-ray that found atherosclerosis was an indication of congestive heart failure; reference treating cardiologist Jared Green's notes other

than to indicate that the condition did not meet listing level and that the cardiac conditions showed stability; note that the Plaintiff was still suffering in 2015 from chronic diastolic congestive heart failure and coronary atherosclerosis; and mention 2016 records that Plaintiff suffered from acute congestive heart failure, coronary artery disease, and shortness of breath. (ECF No. 13 at 7-11.)

This Court finds that the ALJ's summary of the treatment records regarding Plaintiff's cardiovascular limitations is appropriate and substantially supported by the record. The ALJ discusses and weighs both positive and negative findings from the medical records in opining that the record fails to support the presence of greater limitations. Concerning Plaintiff's history of cardiovascular problems, the ALJ cites to: successful stent placement on multiple occasions; a March 15, 2013 echocardiogram showing mild to moderate diastolic dysfunction and severe concentric hypertrophy; an imaging study of the chest revealing atherosclerotic changes; a March 4, 2015 stress test positive for mild ischemia in the inferior wall and a partly reversible defect consistent with ischemia in the territory of the RCA; a March 6, 2015 lower extremity venous ultrasound showing insufficiency in some deep veins and at a single level of the right greater saphenous vein and left smaller saphenous vein; a January 2015 hospitalization for acute congestive heart failure; and a January 2015 echocardiogram showing an ejection fraction of 38% with imaging of the chest suggestive of congestive heart failure. (Record at 24.) While the ALJ notes that Plaintiff has multiple severe cardiovascular impairments, he contrasts the records above with additional treatment notes that support his ultimate finding that Plaintiff is capable of performing light work. These positive findings, as summarized in the Court's discussion of the VE hypotheticals, supra at Section V.b, illustrate objective improvement and a stable cardiovascular condition. (Record at 24.)

Plaintiff also argues that the ALJ ignored evidence of diabetes-related complications including: a 2015 treatment note indicating uncontrolled diabetes causing persistent left-side numbness and decreased strength; 2016 and 2017 treatment notes from a treating internist revealing hand, finger, and feet numbness, severe pain in Plaintiff's back and feet, and burning pain in his legs; notes indicating HBA1C between 14.2 and 18 and glucose number between the 300s and over 700; a recent hospitalization for out of control sugars; serious lower extremity edema; a 2015 note of Plaintiff's HBA1C over 11 and glucose number about 300; a 2015 note from Dr. Jared Green diagnosing Plaintiff with hypertension diabetes, morbid obesity, and edema; a November 2015 record indicating 2+ pitting edema bilaterally in the lower extremities; 2015, 2016, and 2017 endocrinology records showing uncontrolled diabetes; 2015 hyponatremia and hypoglycemia caused by uncontrolled diabetes; and symptoms of blurred vision, polyuria, polydipsia, fluid retention, and neuropathy. (ECF No. 12 at 8-12.)

Again, this Court finds that the ALJ's summary of the treatment records regarding Plaintiff's diabetes and diabetic complications is appropriate and substantially supported by the record. The ALJ begins his analysis by citing to the record to acknowledge Plaintiff's long history of diabetes and diabetic impairments. The opinion notes: a September 2015 diagnoses of uncontrolled diabetes mellitus with hyperglycemia and hyponatremia; a 2017 hospitalization with neuropathic symptoms, uncontrolled type II diabetes mellitus, and hyponatremia; and various reports from Plaintiff of uncontrolled or poorly controlled diabetes and polydipsia. (Record at 24.) The ALJ further cites to various medical exams, treatment notes, and hospitalization records from consultative examiners, endocrinologists, and Plaintiff's treating internist to indicate that, throughout the relevant period, various healthcare providers diagnosed and/or reported the claimant with diabetes, coronary artery disease, obesity, atherosclerosis, and

dyslipidemia. Id. Contrary to Plaintiff's assertion that the ALJ ignored much of the evidence

related to Plaintiff's diabetes, he in fact cites to many of these exact records in acknowledging

Plaintiff's diabetic impairments.[7]

With respect to musculoskeletal impairments, Plaintiff argues that the ALJ either

ignored or misrepresented evidence of persistent back and neck pain in 2013; severe back, neck,

and arm pain in 2014 and 2015; ongoing complaints related to complications from orthopedic

issues; and extensive postsurgical changes in the cervical spine. (ECF No. 12 at 8-12.) In his

opinion, the ALJ first acknowledges Plaintiff's "multiple surgical interventions on the cervical

spine including discectomy, laminectomy, and instrument fusions after failing conservative

treatment." (Record at 23.) The ALJ further notes that, since these 2011 and 2012 surgeries,

Plaintiff has been diagnosed or was reported with: cervical disc disorder, status post occipital

thoracic stabilization with residual left C6 radicular signs, neck pain, paresthesia, decreased

range of motion of the neck, left side numbness, left side decreases strength, decreased deep

tendon reflexes of the left upper extremity, and tenderness of the neck. (Record at 24.)

The ALJ contrasts these limitations with the fact that there has been no surgical

intervention since 2012. Id.  Moreover, the ALJ points to the following musculoskeletal

examinations as evidence that they are not consistent with the "presence of greater physical

limitations": examinations on June 11, 2014, March 10, 2015, April 11, 2016, November 15,

2016 and February 15, 2017 exhibiting normal gait and normal range of motion in the

musculoskeletal system; a March 10, 2015 exam in which Plaintiff was observed with a non-

focal neurological examination; a March 7, 2017 exam exhibiting no myalgia, neck pain, and

---

[7] For example, Plaintiff claims that the ALJ failed to "comment on the 2017 treatment notes from D. Kozlowski with regards to his diabetic complications." The ALJ in fact cites these noted, exhibits B39F, B47F, and B49F in his evaluation of Plaintiff's diabetes and diabetic complications. (Record at 24.)

normal gait and musculoskeletal system; an April 12, 2017 exam exhibiting normal gait, 5/5 strength in the upper/lower extremities, 5/5 grip strength bilaterally, intact hand/finger dexterity, and no sensory deficits; and an August 23, 2017 exam exhibiting no focal motor/sensory deficits and a normal gait. Id. at 24-25. Though Plaintiff argues that the ALJ ignored or misrepresented evidence as to Plaintiff's musculoskeletal impairments, the record is clear that the ALJ considered the full medical history, beginning with the 2011 and 2012 surgeries and tracking Plaintiff's progress throughout the entire relevant period as shown in periodic musculoskeletal examinations.

Regarding evidence of respiratory impairments, Plaintiff maintains that the ALJ failed to consider: a 2011 incident of ventilator dependent respiratory failure; 2014 and 2015 treatment notes from Plaintiff's internist noting that Plaintiff's asthma was poorly controlled and that he had decreased breathing sounds; 2015 treatment notes indicating wheezing, coughing, and shortness of breath; 2015 treatment notes from Plaintiff's cardiologist indicating shortness of breath and chest pain; and 2016 and 2017 treatment records indicating shortness of breath. (ECF No. 12 at 8-12.) The ALJ begins his analysis of Plaintiff's respiratory impairments by noting that, in September 2015, Plaintiff was hospitalized for three days with shortness of breath. (Record at 24.) During this hospitalization, Plaintiff was diagnosed with acute bronchitis. Id. The ALJ goes on to cite consultative examinations from 2015 and 2017, hospital records from 2015 through 2017, and treatment notes from 2013 through 2017 from a variety of Plaintiff's treating physicians (internist, cardiologist, and endocrinologist) in finding that Plaintiff has been diagnosed with asthma, COPD, emphysema and exhibited expiratory wheezes bilaterally, decreased breath sounds, and shortness of breath. Id.

Again, this Court finds that the ALJ's summary of the records regarding Plaintiff's respiratory impairments is appropriate and substantially supported by the record. As evidenced by the opinion, the ALJ reviewed a full history of medical and hospitalization records as well as physical examinations to account for Plaintiff's impairments. The ALJ, noting these limitations, found nevertheless that Plaintiff's treatment for asthma and COPD had been "relatively conservative with treatment being through medications." (Record at 24.)

Lastly, Plaintiff lists his full history of medications to argue that they should have been discussed by the ALJ. Citing Social Security Regulation 16-3p, Plaintiff claims that the ALJ explicitly violated the regulation by failing to consider the type, dosage, effectiveness, and side effects of medication in assessing pain and other symptoms. (ECF No. 12 at 12-13.)

SSR 16–3p, instructs the Administration to evaluate the intensity, persistence, and limiting effects of an individual's symptoms by considering the following factors: (i) daily activities, (ii) the location, duration, frequency, and intensity of pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (v) treatment other than medication for the symptoms, (vi) other measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16–3p; see also 20 C.F.R. §§ 404.1529, 416.929. The regulation does not mandate that an ALJ discuss every single medication in his opinion, and, as stated above, "the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." Phillips, 91 F. App'x at 780 n.7.

In the RFC assessment, the ALJ expressly notes that the analysis was based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. (Record at 22.) Further, the ALJ references the Plaintiff's use of medication in treating his asthma and COPD. Id. at 24. In giving

significant weight to the opinion of Dr. Bracke, the ALJ also acknowledges her finding that Plaintiff could never be exposed to unprotected heights due to side effects of his medication. (Record at 2340.) Accordingly, the Court finds that the ALJ appropriately evaluated Plaintiff's symptoms based on his medications and ,thus, this issue does not warrant remand.

Overall, the Court finds the Plaintiff's argument that the ALJ either ignored or misrepresented evidence unconvincing. Plaintiff invites the Court to re-weigh the evidence and reach a different conclusion than the ALJ, which the Court is not permitted to do. Chandler v. Comm. of Social Security, 667 F.3d 356, 359 (3d Cir. 2011). For the reasons above, this Court finds that substantial evidence supports the ALJ's evaluation of the Plaintiff's evidence of impairment

### d. **Substantial Evidence Supports the ALJ's Evaluation of Dr. Kozlowski's Opinion**

Plaintiff argues that that the ALJ erred by not giving appropriate weight to treating internist, Dr. Anita Kozlowski. (ECF No. 12 at 13-17) Plaintiff also maintains that the ALJ failed to "provide a greater analysis of his findings beyond indicating that some findings by Dr. Kozlowski were an [*sic*] "inconsistent with the full longitudinal record."" Id. at 14. Defendant responds that the ALJ's assessment of Dr. Kozlowski's opinion should be affirmed because he cited facts that provide substantial evidence in support of his decision to give little weight to the treating internist's opinion. (ECF No. 13 at 11-13.)

Generally, the regulations dictate that an ALJ must give medical opinions the weight he deems appropriate based on factors such as: whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 404.1527.

"Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2)). While an ALJ may outright reject a treating physician's opinion "only on the basis of contradictory medical evidence," he may afford such opinion "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429.

On December 16, 2014, Dr. Kozlowski, who had been treating Plaintiff for over ten years, opined that "[s]ince July 2011 [Plaintiff] has been unable to work due to first uncontrolled hypertension then due to complications from cervical disc surgery to repair damage from a motor vehicle accident." (Record at 1715.) She further reported that Plaintiff had "uncontrolled diabetes, uncontrolled hypertension, chronic pain in neck, back, arms, legs, weakness in left arm and right leg" and noted that "[this] disability is permanent." Id. The ALJ accorded "little weight to these findings and conclusions." (Record at 25.) He found that they were "inconsistent with the full longitudinal record including the claimant's reported capabilities, cardiac improvement, and musculoskeletal examination findings… along with a relatively conservative treatment history for asthma/COPD." Id. In support of his opinion, the ALJ cites to the following findings specifically regarding Plaintiff's cardiovascular and musculoskeletal conditions earlier in his opinion:

- As to the claimant's cardiovascular conditions, during multiple examinations/evaluations, the claimant was reported without chest pain or exertional symptoms. Along with this, a May 11, 2015 echocardiogram revealed significant improvement in LV systolic function and normal right ventricular systolic functions. The claimant was also reported as having an ejection fraction of 60%. Further, on November 5, 2015, the claimant was reported as having a stable cardiovascular condition. Further there is no evidence of surgical intervention for chronic venous insufficiency or any recent surgical intervention for the claimant's other cardiac conditions. (Record at 24) (internal citations omitted).

- As to the claimant's musculoskeletal condition, there is no evidence of surgical intervention after 2012. Moreover, musculoskeletal examinations during the relevant period are not consistent with the presence of greater physical limitations. For example, on June 11, 2014, the claimant exhibited a normal gait and normal range of motion in the arms. On March 10, 2015, the claimant was observed with a non-focal neurological examination. On April 11, 2016, the claimant was observed with normal range of motion of the musculoskeletal system and normal gait. On November 15, 2016, the claimant exhibited a normal range of motion of the musculoskeletal system and neck along with a normal gait. Further on February 15, 2017, the claimant exhibited normal range of motion of the musculoskeletal system and normal gait. On March 7, the claimant was reported as being negative for myalgia and neck pain. Along with this, his musculoskeletal system was normal and his gait was normal. On April 12, 2017, the claimant exhibited a normal gait, 5/5 strength in the upper/lower extremities, 5/5 grip strength bilaterally, intact hand/finger dexterity, and no sensory deficits. On August 23, 2017, the claimant exhibited no focal motor/sensory deficits and a normal gait. (Record at 24-25) (internal citations omitted).

Plaintiff claims that the ALJ, "left out the vast majority of critical information from his recitation of the medical records, including those of Dr. Kozlowski." (ECF No. 12 at 14-15.) However, the ALJ cites treatment notes from Dr. Kozlowski at least nine times in support of his decision to accord little weight to her opinion that Plaintiff is unable to work. The ALJ also cites extensively to, among other things, treatment notes from Plaintiff's cardiologist and endocrinologist in discounting Dr. Kozlowski's opinion. An ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)). Accordingly, this Court finds that the ALJ acted in accordance with the Commissioner's regulations and Third Circuit case law when he sufficiently explained his reasons for attributing little weight to her opinion.

**e. Substantial Evidence Supports the ALJ's Evaluation of Dr. Bracke's Opinion**

In addition to arguing that the ALJ did not give appropriate weight to the opinion of Dr. Kozlowski, Plaintiff contends that the ALJ erroneously gave "great weight to the opinions of the non-examining consultant [Dr. Rachael Bracke]." (ECF No. 12 at 15.) Plaintiff asserts that this non-examining reviewer's report is "fraught with errors" and that Dr. Bracke "provided no explanation for her opinion beyond indiscriminately, without explanation, citing to a handful of exhibits." Id. at 15. Defendant counters that Dr. Bracke's opinion regarding Plaintiff's various work-related capabilities was consistent with the record as a whole, and thus, the ALJ was entitled to give the opinion more weight.

Though a treating physician's opinion may generally carry greater weight than a non-examining consultant, if "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit . . . ." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ "cannot reject evidence for no reason or for the wrong reason." Id. (citing Plummer, 186 F.3d at 429.) However, the ALJ is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014).

On October 7, 2017, Dr. Rachael Bracke provided responses to Medical Expert Interrogatories in which she opined, after reviewing Plaintiff's entire medical record for this case, that Plaintiff had the following impairments: uncontrolled diabetes (severe with complications), ischemic heart disease (no current symptoms of chest pain or exertional symptoms), asthma/COPD (only on as needed medications, no pulmonary functional tests in chart since date of disability), chronic venous insufficiency (recent exams with no edema), neck

pain (complains of neuropathy but exams normal), and chronic heart failure (recent exams with no symptoms. (Record at 2335.)[8] Despite these impairments, Dr. Bracke found that Plaintiff was still capable of light physical exertional capacity with other postural, environmental, and manipulative limitations. (Record at 2338-42.)

The ALJ gave significant weight to the findings and conclusions of Dr. Bracke, finding that it was "consistent with the full longitudinal record" including "cardiovascular improvement, reported examinations/observation, and reported capabilities."[9] (Record at 25.) This Court finds that the ALJ was entitled to rely upon this opinion as it was consistent with substantial evidence in the record and he sufficiently articulated his reasons for giving the opinion significant weight.

Plaintiff first claims that Dr. Bracke's opinion is "not factually accurate" as she found that Plaintiff's neck pain had improved since neck surgery, there were no residual impairments, and his recent exams were normal. (ECF No. 12 at 15.) Dr. Bracke cites recent examinations in support of these conclusions. A June 17, 2015 consultative examination report conducted by Dr. Frank Zimba indicated some limited range of motion in Plaintiff's cervical spine (neck region), however noted that the Plaintiff had recovered from surgery with solid fusion from his occipital to thoracic spine. (Record at 434, 448.) Dr. Zimba also noted that Plaintiff's neck was supple (non-rigid) but diagnosed him with "residual left C6 radicular signs,"

---

[8] The ALJ further found, specifically from the alleged onset date to the present, the following regarding Plaintiff's impairments: neck pain improved after surgical interventions and on recent exams no residual impairments; ischemic heart disease was stable with no limiting symptoms during this time; venous insufficiency seems to have improved with recent exams with no edema; asthma was mild, intermittent, and not an impairment; and chronic heart failure symptoms improved, Plaintiff was on medications, and the echocardiogram improved. (Record at 2335.)

[9] Because the Court has already discussed the ALJ's findings at length with regard to Plaintiff's cardiovascular, musculoskeletal, and respiratory conditions as well as his reported capabilities, supra at Section V.c, we incorporate this discussion in support of the Court's conclusion that the ALJ sufficiently explained his reasoning for affording Dr. Bracke's opinion significant weight.

meaning that Plaintiff had tingling, numbness, and/or pain through the arm into the thumb and index finger.[10] (Record at 436-37.) Next, Dr. Bracke cites to an April 12, 2017 consultative examination performed by Dr. Ziba Monfared in which she opined that Plaintiff reported neck pain, however found that Plaintiff's neck was supple (non-rigid) and noted that there were no trigger points or tenderness in his musculoskeletal examination. (Record at 667.) Finally, Dr. Bracke cites to treatment notes from Plaintiff's internist which include no complaints of neck pain in a March 1, 2017 examination. (Record at 1524.) This Court finds that Dr. Bracke's opinion is consistent with the ALJ's analysis of Plaintiff's neck pain and musculoskeletal exams, which show improvement since surgery and normal range of motion.

Plaintiff also claims that Dr. Bracke "did not discuss any significance of the Plaintiff's edema, as she only commented that the edema was related to the treatment process and a natural cause of the disease." (ECF No. 12 at 15.) In responding to an interrogatory asking whether there were any conflicts in the medical record, Dr. Bracke does indicate that there are "[v]arying degrees of edema on exams. Likely related to treatment process and natural cause of disease." (Record at 2336.) However, she further notes that the edema is "intermittent based on fluctuation in exam findings" and not consistently described to meet listing criteria. Dr. Bracke further cites to recent exams from June 17, 2015, November 10, 2016, November 15, 2016, March 1, 2017 indicating no edema . (Record at 437, 1526, 1543, 2260.)

Lastly, Plaintiff argues that Dr. Bracke's opinion that Plaintiff's asthma was "no impairment" is incorrect as, "throughout the record, the Plaintiff has been shown to be suffering tremendously with his breathing." (ECF No. 12 at 15.) As discussed above, Dr. Bracke did opine

---

[10] C6 radiculopathy includes tingling, numbness, and/or pain may radiate through the arm and into the second digit (index finger). Weakness may occur in the front of the upper arm (biceps) or wrist. See Cervical Radiculopathy Symptoms, https://www.spine-health.com/conditions/neck-pain/cervical-radiculopathy-symptoms

that Plaintiff's asthma presented "no impairment" as it was mild and intermittent and Plaintiff only took medicines "as needed" for his asthma. (Record at 2335.) Dr. Bracke again cites to the 2015 consultative examination by Dr. Frank Zimba in which he noted that Plaintiff had a history of asthma and emphysema, but indicated his chest and lungs were clear during auscultation.[11] (Record at 435.) Dr. Zimba diagnosed Plaintiff with "COPD with continued smoking" yet noted that Plaintiff was not taking inhaled steroids. Id. at 436-37. Dr. Bracke also cites to 2015 inpatient hospital records in which Plaintiff was admitted with shortness of breath, tobacco abuse, acute bronchitis, and diabetic complications. (Record at 489.) The medical record attributed Plaintiff's shortness of breath to acute bronchitis, obesity hypoventilation syndrome, obstructive sleep apnea, and tobacco use. Id. at 490. Discharge notes indicate, however, that Plaintiff was being treated with medicine for acute bronchitis and was on a steroid taper and breathing treatments. Id. Finally, Dr. Bracke refers to the April 2017 consultative examination report of Dr. Monfared in which he opined that Plaintiff does have a history of asthma and uses an inhaler, but "had not had any attack requiring him to be in the hospital or further evaluation by clinic." (Record at 664.) Dr. Monfared diagnosed Plaintiff with asthma and noted scattered wheezing upon examination of chest and lungs, but no other abnormal sounds. Id. at 666-67.

Though Plaintiff argues that Dr. Bracke's opinion is "fraught with errors" this Court finds that it is supported by objective medical evidence, as discussed supra and as cited to by Dr. Bracke. Further, it is consistent with the ALJ's evaluation of Plaintiff's medical record. As to Plaintiff's neck pain, the ALJ also cited normal musculoskeletal exams and range of motion along with a March 2017 report of Plaintiff being negative for myalgia and neck pain. (Record at 24-25.) Regarding Plaintiff's asthma and COPD, the ALJ found that Plaintiff's

---

[11] Auscultation is a medical term which refers to listening to the sounds of the body, typically with a stethoscope. See Breath Sounds, https://medlineplus.gov/ency/article/007535.htm

treatment had been relatively conservative with treatment primarily through medication. Id. at 24. Therefore, the ALJ was entitled to give Dr. Bracke's opinion significant weight.

**f.  The ALJ Appropriately Evaluated Plaintiff's Activities of Daily Living in Formulating his RFC**

Plaintiff claims that the ALJ erred in relying on Plaintiff's "limited activities of daily living" to deny his claim for benefits and "at the same time mischaracterized or left out critical evidence that the Plaintiff explained with regards to the Plaintiff's sporadic activities." (ECF No. 12 at 18.) These "limited activities," Plaintiff argues, "do not show an ability to perform any exertional level of work, eight hours a day, five days a week or an equivalent schedule in an occupation." Id. at 17.

When determining an individual's RFC, an ALJ assesses all relevant evidence from the record, including statements from medical sources and a claimant's own description of his limitations. See 20 C.F.R. § 404.1545(a)(1), (3). Thus, it is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his RFC. Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 118 (3d Cir. 2012)(citing Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir.2002)).  The regulations also dictate that the ALJ may consider daily activities when evaluating the credibility of Plaintiff's subjective complaints of pain and other symptoms.  See 20 C.F.R. § 404.1529(c)(3).

In his opinion, the ALJ described Plaintiff's testimony of his pain and limitations, stating:

> At the October 2017 disability hearing, the claimant testified to continuing limitations from congestive heart failure, bilateral diabetic neuropathy, back pain, neck pain, and shortness of breath. The claimant also reported of pain in his arms and hands along with difficulties in turning his neck. He testified to having very little strength in the arms and numbness/soreness of the legs. The

claimant further reported of a swollen right leg. He testified that he was only able to sit for 30 minutes and stand for 10-15 minutes along with having difficulty walking. The claimant indicated that he had problems becoming short of breath and had sleeping problems. He testified that he had problems with shortness of breath and that he was able to lift his arms over his head with difficulty. The claimant further reported that he was unable to kneel or crawl.

(Record at 23.) The ALJ noted, however, that despite these limitations, Plaintiff reported and/or was reported with capabilities and activities that were inconsistent with "the presence of greater physical limitations." Id. at 25. In support of this statement, the ALJ indicated the following:

[O]n June 25, 2013, the claimant reported that he had been walking a lot. Further, on June 17, 2015, the claimant reported that he lived with his girlfriend and helped with cooking along with being able to shower and dress himself. On April 27, 2016, the claimant underwent a physical in order to provide foster care for his grandchildren aged 10 months old and three years old. The claimant was reported as having "been caring for them, doing well." On April 12, 2017, the claimant was reported as cooking three times per week, shopping once a week, being able to dress himself, and providing childcare twice a week. On August 23, 2017, the claimant was noted as wanting to adopt his grandchildren. Also, at the October 2017 disability hearing, the claimant testified that he was able to drive an automobile.

(Record at 25)(internal citations omitted.)

Contrary to Plaintiff's argument, the ALJ did not rely solely on Plaintiff's activities of daily living to deny his claim for benefits but considered those in combination with objective medical records and medical opinions that reflected cardiovascular improvement, conservative treatment for asthma and COPD, and normal musculoskeletal examinations. Id. at 24-25. Therefore, this Court finds that ALJ did not err when he considered, among other things, Plaintiff's daily activities in finding that he was capable of performing light work with additional limitations.

### g. **The ALJ Appropriately Considered Plaintiff's Work History in Assessing Credibility**

Plaintiff argues that the ALJ "erred in failing to consider [Plaintiff's] excellent work history in assessing his credibility." (ECF No. 12 at 18-19.) An ALJ is required to consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.R.F. §§ 404.1529(a); 416.929(a); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). When evaluating subjective complaints, work history is just one of many factors an ALJ must consider.[12] A plaintiff's long work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility. Polardino v. Colvin, No. CIV.A. 12-806, 2013 WL 4498981, at *5 (W.D. Pa. Aug. 19, 2013); see also Corley v. Barnhart, 102 F. App'x 752, 755 (3d Cir. 2004) (finding that a the ALJ did not err by failing to afford plaintiff heightened credibility based solely on his work history).

Here, the ALJ did consider Plaintiff's work history when he ultimately found that Plaintiff could not perform past relevant work including that of a construction worker or truck delivery driver. (Record at 26.) The ALJ also appropriately classified Plaintiff's work in 2013, after the alleged onset date, as an unsuccessful work attempt. Id. at 19. Further, the ALJ appropriately took into consideration many other factors, including Plaintiff's own testimony as to his capabilities, extensive medical records, and conservative medical treatment in evaluating

---

[12] "Consideration of other evidence. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms…. We will consider all of the evidence presented, *including information about your prior work record,* your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons." 20 C.F.R. §404.1529(c)(3) (emphasis added).

the extent to which Plaintiff's subjective complaints were supported by the record.[13] (Record at 25.)

Plaintiff cites to The Honorable Judge Schmehl's reversal of a Magistrate Judge's report and recommendation in <u>Diggs v. Colvin</u>, No. 13-cv-04336, 2015 WL 3477533 (E.D. Pa. May 28, 2015) as further authority in support of his argument. In <u>Diggs</u>, the plaintiff worked for twenty-six years, twenty-four of them continuously. Despite finding multiple errors with the ALJ's credibility determination, including a failure to take this work history into account, the Magistrate Judge did not recommend remand. The District Court declined to accept the recommendation and remanded the case to the ALJ for further proceedings. Judge Schmehl stated:

> … [T]he Magistrate Judge noted that the ALJ failed to discuss Plaintiff's work history and found this "failure to expressly note plaintiff's seventeen year work history to not constitute reversible error." However, I find that the ALJ should have recognized and discussed Plaintiff's long work history in evaluating her credibility…. Plaintiff worked for twenty-six years prior to her disability, twenty-four of them continuously. This fact alone does not make her entirely credible, but it does need to be taken into consideration when evaluating her credibility. Further, even if the ALJ's failure to consider Plaintiff's long work history did not amount to reversible error by itself, I find that when this error is taken together with the additional errors discussed below regarding Plaintiff's credibility, reversible error exists and remand is warranted.

<u>Id</u>. at *1. Unlike <u>Diggs</u>, this Court finds that the ALJ did consider Plaintiff's extensive work history, as discussed above, in addition to testimony as to his capabilities as well as objective medical records in determining that Plaintiff was not disabled. Thus, we find that the ALJ did not err in in his assessment of Plaintiff's subjective complaints.

---

[13] For example, Plaintiff testified that he: had been walking a lot recently, assisted with cooking, was able to shower and dress himself, had been caring for his grandchildren twice a week, had been shopping once a week, and was able to drive. (Record at 25.)

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, this Court finds that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Request for Review is **DENIED**. An appropriate Order follows.

BY THE COURT:

 */s/ Henry S. Perkin*
HENRY S. PERKIN
United States Magistrate Judge